# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF WEST VIRGINIA
# AT CLARKSBURG

| | |
|---|---|
| AUGUST MACK ENVIRONMENTAL, INC., ) | ELECTRONICALLY FILED |
| ) | 4/19/2023 |
| Plaintiff-Appellant, ) | U.S. DISTRICT COURT |
| ) | Northern District of WV |
| vs. )  Civil Action No. 1:23-cv-36 Kleeh | |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | |
| ) | |
| Defendant-Appellee. ) | |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADMINISTRATIVE DECISION AND REQUEST FOR JURY TRIAL

Under 42 U.S.C. § 9612(b)(5), Plaintiff-Appellant, August Mack Environmental, Inc. ("AME"), hereby initiates the appeal of the final administrative decision issued on March 20, 2023 by the Defendant-Appellee, the United States Environmental Protection Agency ("EPA") by filing this complaint.

### *Nature of Complaint*

1.      This civil action asks the Court to review and invalidate EPA's arbitrary, capricious, and unlawful refusal to reimburse AME for nearly $2.7 *million* it spent cleaning up a Superfund site located in Fairmont, West Virginia. This is AME's second

appeal in this matter, and AME again seeks recourse in an Article III court from arbitrary, capricious, and unlawful administrative action.

2.     The first appeal resulted in a clear victory for AME. *August Mack Environmental, Inc. v. U.S. E.P.A.*, 841 Fed.Appx. 517 (4th Cir. 2021). The Fourth Circuit determined that EPA's dismissal of AME's claim "was an arbitrary and capricious abuse of discretion," vacated the district court's erroneous dismissal of AME's complaint, and remanded the matter to EPA for further administrative proceedings, including discovery, wherein EPA could "dispute and litigate" AME's substantial compliance with EPA's preauthorization process "and any Superfund reimbursement that might be awarded." *Id.* at 524-525.

3.     In its order, the Fourth Circuit criticized the regulations that EPA promulgated under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"). Specifically, to be eligible for Superfund reimbursement, EPA's CERCLA regulations require one to apply for preauthorization using EPA Form 2075-3, which is specifically included in the regulations, before starting a response action. However, the Fourth Circuit held that EPA's preauthorization application form is "legally obsolete." *Id.* at 523-524. Because of this fatal defect in EPA's CERCLA regulations, the Fourth Circuit held that AME "could not be required to seek preauthorization in the manner specified by the EPA" and that "EPA should not

arbitrarily fault August Mack for failing to strictly comply with the preauthorization process." *Id.* at 524.

4. Nevertheless, on remand, EPA's administrative law judge ("ALJ") misinterpreted the Fourth Circuit's order in the following way: "[T]he Fourth Circuit implicitly affirmed the preauthorization regulations' validity" and "did not strike the preauthorization requirement for purposes of this case[.]" (Ex. A, p. 19 n.8 and 22; *see also* pp. 17-18.) This misinterpretation resulted in the ALJ's erroneous grant of EPA's motion for accelerated order (analogous to a motion for summary judgment) and denial of AME's motion for accelerated order. The ALJ's order is attached as Exhibit A.

5. EPA's misapplication of the Fourth Circuit's order is but one of many reversible errors that led to EPA's arbitrary, capricious, and unlawful refusal to reimburse AME.

6. Congress has specifically provided this Court with jurisdiction to review EPA's refusal to determine if it is an arbitrary and capricious abuse of discretion. *See* 42 U.S.C. § 9612(b)(5).

### *Parties*

7. AME is an Indiana corporation headquartered at 1302 North Meridian Street, Suite 300, in Indianapolis, IN.

8. The United States Environmental Protection Agency is a federal executive agency with its headquarters located at 1200 Pennsylvania Avenue, N.W. in Washington,

D.C. EPA has ten regional offices, including Region 3, which has authority over West Virginia. EPA maintains several offices in West Virginia.

## *Jurisdiction*

9. This Court has jurisdiction over this action pursuant to Section 112(b)(5) of CERCLA. This section provides final administrative decisions made by EPA regarding reimbursement from the Superfund "may be appealed within 30 days of notification" of the decision. 42 U.S.C. § 9612(b)(5). This section provides further that "[a]ny such appeal shall be made to the Federal district court for the district where the release or threat of release took place."

10. Here, the "release or threat of release" took place in Fairmont, Marion County, West Virginia, which is within the Northern District of West Virginia.

## *Venue*

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

## *Background Facts*

12. The Big John's Salvage – Hoult Road Superfund Site (the "BJS Site") is located in Fairmount, Marion County, West Virginia. Historic operations in and around the BJS Site tainted the site and the nearby Monongahela River with contaminated tar and other hazardous substances. On February 4, 2000, the BJS Site was proposed for inclusion on the National Priorities List ("NPL"), a register of the most serious uncontrolled or abandoned hazardous waste sites in the country. On July 27, 2000, the

site was formally added to the NPL, making it eligible to receive money from the federal "Superfund" to clean up the site.

13.    In October 2012, three companies — Exxon Mobil Corp. ("Exxon"), Vertellus Specialties Inc. ("Vertellus"), and CBS Corp. ("CBS")— entered into a consent decree ("Consent Decree") with EPA and the West Virginia Department of Environmental Protection ("WVDEP"), agreeing to perform cleanup work selected and approved by the EPA in an "action memorandum."

14.    Under the Consent Decree, these companies (referred to as potentially responsible parties or PRPs) provided EPA with nearly $37 million (in cash and financial assurances) to be used to pay for the cleanup of the BJS Site.

15.    Vertellus was the PRP required to perform the cleanup at the BJS Site under the Consent Decree; the Consent Decree refers to this as the "Performing Defendant." Vertellus selected AME, an Indiana-based environmental consulting company, as the "Supervising Contractor" to perform the EPA-approved cleanup work. EPA specifically approved AME as the "Supervising Contractor" and supervised all of the work AME performed and all of the costs AME incurred.

16.    From October 2012 and continuing to May 2016, AME diligently performed cleanup actions at the site. AME expected to be paid by Vertellus or from the $37 million in site-specific funding held by EPA.

17.    In May of 2016, Vertellus went broke and filed for liquidation under Chapter 11 of the Bankruptcy Code.

18. As a consequence of the Vertellus bankruptcy and pursuant to the Consent Decree, EPA initiated a Work Takeover for the Big John Salvage Superfund Site.

19. The EPA's Work Takeover triggered paragraph 42 of the Consent Decree, which caused the transfer of the monies set aside for the cleanup and related activities and expenses into the BJS Site Special Account. The funds in the BJS Site Special Account are specifically retained to conduct or finance response activities at or in connection with the BJS Site.

20. After Vertellus filed for bankruptcy protection, AME made claims against Vertellus in bankruptcy court. AME's unsecured claims have been or will be denied without any payment to AME.

21. AME has also requested payment from CBS and Exxon. Both companies rejected AME's request.

22. In January 2017, AME requested reimbursement from EPA which could use a portion of the $37 million in available site-specific funds or money from the Superfund.

### *Procedural History*

23. On February 8, 2017, EPA denied AME's claim in a brief one and a half page letter.

24. In response to EPA's denial, AME timely sought a "Request for Hearing" with the EPA Administrator Scott Pruitt. In its Request for Hearing, AME specifically requested that it be reimbursed from the Fund for its unpaid response costs or, in the

alternative, that it be reimbursed from the site-specific funds established by EPA's Consent Decree.

25. AME's request was submitted to a self-described "Tribunal" of EPA's administrative law judges and assigned Docket No. CERCLA-HQ-2017-0001.

26. Rather than proceeding to a review of the merits of AME's complaints, the Tribunal entertained a motion to dismiss filed by EPA's legal counsel. After full briefing (but without oral argument), the Tribunal granted EPA's motion to dismiss on December 18, 2017, and dismissed AME's Request for Hearing with prejudice.

27. AME sought review of the Tribunal's dismissal in the Northern District of West Virginia, but the district court dismissed AME's operative complaint under Federal Rule of Civil Procedure 12(b)(6).

28. AME then appealed to the United States Court of Appeals for the Fourth Circuit.

29. The Fourth Circuit ruled in AME's favor, determining that EPA's dismissal of AME's claim "was an arbitrary and capricious abuse of discretion," vacating the district court's erroneous dismissal of AME's complaint, and remanding the matter to EPA for further administrative proceedings. *August Mack*, 841 Fed.App'x. at 524-525.

### *Administrative Action after Remand*

30. On August 27, 2021, AME filed a request for prehearing conference under 40 C.F.R. § 305.26.

31. The Tribunal denied AME's request in its September 8, 2021 Order of Resdesignation and Prehearing Order (again, without oral argument).

32. After EPA failed to timely respond to AME's written discovery (interrogatories, requests for production of documents, and requests for admission) and claimed that no discovery should take place in the administrative proceeding, AME filed a Motion to Compel Discovery and for Sanctions.

33. AME then filed a motion for hearing on the motion to compel on February 3, 2022.

34. One day later, on February 4, 2022, the Tribunal denied AME's motion for hearing.

35. On May 12, 2022, the Tribunal denied AME's motion for sanctions and denied in part and granted in part the motion to compel. That order is attached as Exhibit B.

36. Therein, the Tribunal concluded that EPA has no obligation to respond to AME's discovery requests. (Ex. B, pp. 2-3.)

37. Further, the Tribunal denied AME's alternative request for permission to conduct discovery by way of interrogatories and requests for production of documents. (*Id.* at 6-8.)

38. The Tribunal denied AME the opportunity to conduct this basic written discovery because of its mistaken belief that "[t]he narrow issue before this Tribunal is whether August Mack substantially complied with the preauthorization requirements,"

that "[t]his question focuses on August Mack's actions related to its work at the Site," and that "[t]he validity of the preauthorization scheme as a whole is not within the purview of this proceeding." (*Id.* at 7.)

39. However, even under its impermissibly narrow view of discovery before an administrative body and the issue on remand, the Tribunal recognized that AME's discovery requests sought relevant material. (*Id.*) ("Some of these requests are relevant . . .")

40. Nevertheless, the Tribunal barred AME from receiving relevant material because the requests "are overly broad" and "likely include privileged material." (*Id.*) The Tribunal failed to explain how AME's requests were overly broad or why seeking "privileged material" renders otherwise proper discovery improper.

41. The Tribunal did require EPA to respond AME's requests for admission though. (*Id.* at 8.) And, despite EPA not having served or requested permission to conduct written discovery, the Tribunal *sua sponte* ruled that there is good cause for EPA to serve AME with requests for admission "if it so wishes." (*Id.*)

42. Finally, the ALJ allowed AME to depose three witnesses that EPA listed on its witness list but limited the scope of questioning "to the topics of the witnesses' proposed testimony as described on pages 2 and 3 of the Agency's Initial Prehearing Exchange." (*Id.* at 9.) Additionally, the Tribunal denied AME permission to depose EPA Administrator Michael Regan. (*Id.*)

43. On March 20, 2023, the Tribunal granted EPA's motion for accelerated order, denied AME's motion for accelerated order, granted in part and denied in part AME's motion to strike, and denied AME's motion for remote hearing.

### *Count I – Arbitrary and Capricious Abuse of Discretion*

44. AME hereby incorporates the above paragraphs of this Complaint as though fully restated herein.

45. Section 112(b)(5) of CERCLA provides that final agency decisions regarding reimbursement from the Superfund may be overturned if they are an "arbitrary or capricious abuse of discretion."

46. Here, the ALJ's refusal to use the Superfund to reimburse AME for nearly $2.7 million was an arbitrary or capricious abuse of discretion for the following reasons:

   A. The ALJ wrongly concluded that the Fourth Circuit affirmed the preauthorization regulations' validity in its January 7, 2021 order. (Ex. A, p. 19 n.8) ("the Fourth Circuit implicitly affirmed the preauthorization regulations' validity")

   B. The ALJ wrongly concluded that the Fourth Circuit "did not strike the preauthorization requirement for purposes of this case[.]" (*Id.* at 22.)

   C. The ALJ wrongly concluded that AME was barred from raising facial attacks to the preauthorization scheme. (*Id.* at 16; *see also id.* at 29 n.18 ("August Mack is now foreclosed from arguing that the regulations themselves are unlawful[.]")

      i. Specifically, the ALJ wrongly concluded that AME's facial attacks on the preauthorization scheme were not within the scope of remand because the Fourth Circuit "*implicitly assumed* the process's validity." (*Id.* at 17 (emphasis added).)

      ii. In addition, the ALJ wrongly concluded that AME waived its facial attacks on the preauthorization scheme by raising them "for the first time in its" motion for accelerated order. (*Id.*)

      iii. Further, the ALJ wrongly concluded that AME's facial attacks on the preauthorization scheme were irrelevant to the issue on remand. (*Id.* at 18.)

D. The ALJ wrongly concluded that access to billions of dollars of Superfund money for sites that have trillions of dollars of liabilities flowing from grave harm caused to humans and the environment is not a major question that only Congress can answer. (*Id.* at 19-20.)

E. The ALJ failed to address specifically AME's argument that the EPA's creation of the preauthorization scheme violates the separation of powers doctrine.

F. The ALJ failed to address specifically AME's argument that EPA's preauthorization requirement is ultra vires, violates the Administrative Procedure Act, and must be stricken.

G. The ALJ wrongly concluded that AME lacks standing to bring its as applied challenges to the preauthorization scheme. (*Id.* at 21.)

H. The ALJ wrongly concluded that AME's as applied challenges to the preauthorization scheme are irrelevant to this case. (*Id.*)

I. The ALJ wrongly held that fulfilling the purposes of a regulation does not satisfy the substantial compliance standard.

J. The ALJ wrongly concluded that AME failed to satisfy the objectives of the preauthorization process.

K. The ALJ ignored AME's evidence establishing it substantially complied with the preauthorization process.

   i. Specifically, the ALJ ignored AME's evidence establishing it satisfied the objectives of the preauthorization process.

   ii. In addition, the ALJ ignored AME's evidence establishing it incurred necessary costs while performing work consistent with the National Contingency Plan.

   iii. Further, the ALJ ignored AME's evidence establishing that EPA possessed information required by the legally obsolete preauthorization application before AME started work at the BJS Site.

L. The ALJ ignored AME's evidence that EPA's administration of the preauthorization scheme defeats the objectives of preauthorization.

M. The ALJ wrongly concluded that substantial compliance with the preauthorization process is 100% procedural, and that substantial compliance means attempting to obtain preauthorization before beginning work. *Id.* at 33 ("August Mack's undisputed failure to attempt to obtain preauthorization before beginning work at the Site means that August Mack did not rise to this reasonable expectation.")

N. The ALJ failed to view the evidence in a light most favorable to AME when granting EPA's motion for accelerated order.

O. The ALJ erroneously faulted AME for not fulfilling remedial action requirements when AME's work was a removal action.

P. The ALJ wrongly rejected AME's futility arguments despite EPA admitting that even if AME had timely applied for preauthorization using the legally obsolete application, EPA still would have denied AME's request.

Q. The ALJ ignored AME's evidence that EPA only grants preauthorization to CERCLA-liable parties that have settled their liability with the government.

R. The ALJ wrongly concluded that AME was not entitled to judgment in its favor as a matter of law.

### *Count II – Unlawful Agency Action*

47. AME hereby incorporates the above paragraphs of this Complaint as though fully restated herein.

13

48. In addition to being arbitrary and capricious, the agency action at issue is otherwise unlawful.

49. EPA's preauthorization requirement is invalid on its face for the following reasons:

> A. CERCLA is unambiguous and does not permit or require EPA to "preauthorize" a private party's work before that party has access to the Superfund, making the EPA's preauthorization regulations and requirement ultra vires.
>
> B. EPA's preauthorization scheme conflicts with the claims procedure set forth in Section 112 of CERCLA.
>
> C. By requiring preauthorization before a party has access to the Superfund, EPA has usurped the role of the legislature and substituted its judgment for that of Congress, violating the separation of powers doctrine.
>
> D. The gravity of the trillions of dollars of liability that flows from the many sites on the NPL, billions of dollars earmarked for the cleanup of these sites, and harm to the People and environment caused by untimely cleanup of these sites implicates the major questions doctrine, which EPA violates by restricting access to the Superfund to only preauthorized settling PRPs without clear congressional authority to do so.
>
> E. EPA's preauthorization requirement is outside the bounds of its statutory authority, violating the Administrative Procedure Act.

50. By affirming EPA's unlawful preauthorization requirement, the Tribunal's final order is unlawful.

51. AME's arguments that the preauthorization requirement is ultra vires, violates the separation of powers doctrine, and violates the major questions doctrine implicate the Constitution, AME's constitutional rights, and protections afforded by the Constitution.

52. The Tribunal's holding that AME waived these arguments, and therefore waived rights and protections afforded by the Constitution, by not raising them in response to EPA's initial pre-discovery motion to dismiss is unlawful. (Ex. A, pp. 17, 19) ("August Mack does not dispute that it is raising its arguments regarding the preauthorization regulation's legality for the first time in its [motion for accelerated order] . . . August Mack did not preserve its legality arguments at all . . . August Mack had every incentive to question the preauthorization rule's legality from the outset of this action.")

### *Count III – Deprivation of Due Process*

53. AME hereby incorporates the above paragraphs of this Complaint as though fully restated herein.

54. In addition to the ALJ's decision being arbitrary, capricious, and unlawful, AME's due process rights have been violated.

55. The Constitution requires that litigants receive a fair trial in a fair tribunal. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877 (2009) ("It is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process.'")

56. The right to an impartial adjudication is a fundamental requirement of due process. *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984) ("It is, of course, axiomatic that '[t]rial before "an unbiased judge" is essential to due process.'"); *Kendrick v. Sullivan*, 784 F.Supp. 94, 102 (S.D.N.Y. 1992) ("The right to an impartial adjudication is a basic element of due process.")

57. The opportunity to be heard at a meaningful time and in a meaningful manner is a fundamental requirement of due process. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

58. A litigant who fails to receive a fair trial in a fair tribunal has its constitutional due process rights violated.

59. A litigant who fails to receive an impartial adjudication has its constitutional due process rights violated.

60. A litigant who fails to be heard at a meaningful time and in a meaningful manner has its constitutional due process rights violated.

61. These aspects of due process apply in an administrative setting. *Kendrick*, 784 F.Supp. at 102 ("This aspect of due process applies equally in an administrative setting as it does in a judicial forum."); *Hummel*, 736 F.2d at 93 ("That due process rule is applicable to administrative as well as judicial adjudications.")

62. In fact, because administrative adjudications lack the procedural safeguards available in Article III courts, Article III courts strictly apply these due process requirements. *Id.*

63. For EPA's administrative adjudication to adhere to the Constitution, AME must have received a fair trial in a fair tribunal, including an impartial adjudication and an opportunity to be heard at a meaningful time and in a meaningful manner.

64. However, the cumulative actions by EPA's ALJ deprived AME of its constitutional due process rights. These actions include, but are not necessarily limited to, the following:

> A. AME repeatedly requested hearings so that its counsel could present oral argument during the pendency of the administrative adjudication, but the ALJ denied every one of those requests and issued a final order in EPA's favor without once holding a hearing or even a telephonic status conference.
>
> B. The ALJ denied AME the opportunity to conduct basic written discovery through interrogatories and requests for production of documents despite recognizing that AME's discovery requests sought relevant material.
>
> C. Despite EPA not having served or requested to serve written discovery on AME, the ALJ *sua sponte* ruled there was good cause for EPA to serve requests for admission on AME and allowed EPA to serve such discovery requests in the future "if the Agency so desires." (Ex. B, p. 8.)

    D. The ALJ ruled that she would not impose "any sanctions" against EPA "[i]n this case" but left open the possibility that she would sanction AME in the future. (*Id.* at 10.)

    E. The ALJ failed to follow specific directions from the Fourth Circuit and failed to follow its binding precedent.

    F. The ALJ ignored undisputed evidence that supported a grant of AME's motion for accelerated order and a denial of EPA's motion for accelerated order.

    G. The ALJ ignored legal arguments that supported a grant of AME's motion for accelerated order and a denial of EPA's motion for accelerated order.

65. Because of the violations of AME's due process rights, the ALJ's grant of EPA's motion for accelerated order should be vacated.

66. Because of the violation of AME's due process rights, this Court should not remand this matter back to EPA's ALJ, but rather, rule on the merits of AME's claim.

### *Prayer for Relief*

Wherefore, Plaintiff-Appellant AME respectfully requests that this Court enter a judgment against the Defendant-Appellee EPA and in favor of Plaintiff-Appellant, and that the Court:

    A) Instruct EPA and/or EPA's Tribunal to compile, submit, and certify the whole administrative record that was before the Tribunal before she issued her order

granting EPA's motion for accelerated order and denying AME's motion for accelerated order;

B) Vacate the EPA's March 20, 2023 order on the cross motions for accelerated order;

C) Order EPA to reimburse AME for its past response costs in the amount of $2,661,150.98 plus prejudgment and post judgment interest;

D) Order EPA to pay all of AME's attorneys' fees and costs in litigating this entire matter, including the first administrative proceeding, first appeal, second administrative proceeding, and this second appeal;

E) Alternatively, remand this matter back to the Agency with instructions to process AME's requests for reimbursements under appropriate standards and procedures; and

F) Award AME all further relief that is just and proper.

### *Jury Demand*

Plaintiff-Appellant AME respectfully demands a trial by jury on all issues so triable.

**CLARK HILL PLC**

Dated: April 19, 2023    By:   /s/ Mario R. Bordogna
    Mario R. Bordogna, Esq.
    W. Va. Bar ID No. 9491
    Clark Hill, PLC
    1290 Suncrest Towne Centre
    Morgantown, West Virginia 26505
    p. 304-907-2133
    f. 304-907-2130
    mbordogna@clarkhill.com

*Counsel for Plaintiff August Mack Environmental, Inc.*